IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALEJANDRO MUNIZ** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | **NO. 21-2762** |
| **v.** | : | |
| | : | |
| **CITY OF PHILADELPHIA,** *et al.* | : | |
| | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                 SEPTEMBER 29, 2023

# MEMORANDUM OPINION

**INTRODUCTION**

Plaintiff Alejandro Muniz filed this civil action against Defendants Correctional Sergeant Clifford Jeudy ("Defendant Jeudy"), Correctional Sergeant Nathaniel Davis ("Defendant Davis"), Correctional Officer Larry Burnett ("Defendant Burnett"), Correctional Officer Mark Broady ("Defendant Broady") (collectively, "Correctional Defendants"), the City of Philadelphia (the "City"), Commissioner Blanche Carney ("Defendant Carney"), Warden Michelle Farrell ("Defendant Farrell") (collectively, with the "Correctional Defendants," "Defendants"), and the Philadelphia Industrial Correction Center (the "PICC")[1] pursuant to 42 U.S.C. § 1983. Plaintiff's claims are premised on Defendants' failure to protect him from an assault by his cellmate, Angelo

---

[1] Plaintiff also asserts a *Monell* claim against the PICC. Though Defendants do not move for summary judgment with respect to the *Monell* claim asserted against PICC, Defendants noted in their answer that PICC "is a prison facility owned and operated by the City and has no independent corporate existence from the City, and therefore, cannot be sued." (Defs'. Ans., ECF 5, at ¶ 3). This Court agrees that the PICC is "not a 'proper party' or a 'person' under Section 1983" and, thus, any claims against PICC cannot proceed and are, therefore, dismissed. *See Peele v. Phila. Prison Sys.*, 2015 WL 1579214, at *2 (E.D. Pa. Apr. 8, 2015) (quoting *Jackson v. City of Erie Police Dep't*, 2014 WL 2783962, at *2 n.2 (3d Cir. June 20, 2014)).

Zayas ("Zayas"),[2] while both were in custody at the PICC. In addition, Plaintiff asserts a *Monell* claim against the City and Farrell premised on alleged policies of allowing excessive force by correctional officers.

Before this Court is Defendants' motion for summary judgment filed pursuant to Federal Rule of Civil Procedure ("Rule") 56, [ECF 31], which Plaintiff has opposed. [ECF 36].[3] The issues raised by the parties have been fully briefed and are ripe for disposition. For the reasons set forth, the motion is granted, and judgment is entered in favor of Defendants.

**BACKGROUND**

Plaintiff alleges that Defendants violated his constitutional rights when they allowed Zayas, his prison cellmate, to attack him. When ruling on a motion for summary judgment, a court must consider record evidence and supported relevant facts in the light most favorable to the non-movant; here, Plaintiff. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011). The relevant facts are summarized as follows:[4]

> On or about February 12, 2018, Plaintiff and Zayas were in custody at the PICC, in different cells. On February 21, 2018, Zayas attacked another detainee, Michael Delacruz, on the top of a tier landing. Zayas received a "critical" markup for this fight.[5] Between 2010 and 2012, Zayas, while detained at PICC and other correctional facilities, had received "critical" markups due to fighting with other inmates. In some of those previous incidents, Zayas's cellmates were physically

---

[2]   Plaintiff asserts state law assault and battery claims against Zayas. These claims are not addressed here.

[3]   This Court has also considered Defendants' reply. [ECF 38].

[4]   The facts are derived from the parties' statements of fact, briefs, and the exhibits attached thereto. To the extent any facts are disputed, such disputes will be noted and, if material, will be construed in the Plaintiff's favor pursuant to Rule 56.

[5]   In his deposition, Defendant Jeudy explained the types of disciplinary markups at PICC as "minor, major, critical [markups]. Minor would be the least severe, major would be the next level, and critical would be like the top violation." (Pl's. Opp., ECF 36-8 Ex. F, at p. 15). The detainees who received a critical mark-up are usually placed in solitary confinement. (*Id.*).

injured. Zayas became Plaintiff's cellmate in the F-Unit "approximately, a week, week and a half" before February 28, 2018. (Pl's. Opp., ECF 36-7 Ex. E, at p. 16).

On February 28, 2018, around 9:30 p.m., Zayas attacked Plaintiff while they were in their joint cell, repeatedly biting Plaintiff's arms, chest, and penis, resulting in a piece of Plaintiff's penis being torn off. At the time, both Defendants Broady and Burnett were working at the F-Unit. When the incident occurred, Defendant Burnett was at the console, located somewhere outside of the unit through a door;[6] and Defendants Davis and Jeudy were also on duty but were not present at the F-Unit. When Defendant Burnett heard commotion coming from Plaintiff and Zayas's cell, he and Defendant Broady went to the cell. Screenshots of a video recording show that Defendant Burnett was behind the console from 9:31:07 p.m. until 9:38:46 p.m., when he got up and went to Plaintiff and Zayas's cell, arriving there at 9:39:28 p.m. Defendants Burnett and Broady ordered Zayas to lie on the floor and he complied. Both Plaintiff and Zayas were then handcuffed.

At approximately 10:00 p.m., Plaintiff was taken to the prison infirmary.[7] Later, Plaintiff was taken to an outside hospital where he received stitches on his penis. On March 1, 2018, Plaintiff sent a letter to Lieutenant Tabatha Baldwin in which he described the incident and stated that he had previously told two sergeants about Zayas and "issues" they were having. On March 5, 2018, Zayas was found guilty by the internal prison system of sexually assaulting Plaintiff.

After his discharge from the PICC, Plaintiff learned that his penis was not working properly, and he was prescribed Viagra. Plaintiff claims that he is unable to have an erection without the medicine and the medicine is not always effective.

**LEGAL STANDARD**

Federal Rule of Civil Procedure ("Rule") 56 governs summary judgment motion practice. Fed. R. Civ. P. 56. Specifically, this rule provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* A fact is "material" if proof of its existence or non-existence

---

[6] The parties dispute whether Defendant Broady was also at the console. This disputed fact, however, is immaterial.

[7] Plaintiff contends that the incident lasted 35 minutes but screenshots from a video recording in the prison do not support Plaintiff's claim. Notwithstanding, there does appear to be a dispute as to the amount of time it took the Correctional Defendants to respond to Zayas's attack. For the reasons discussed, this dispute is also not material.

might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Under Rule 56, the court must view the evidence in the light most favorable to the non-moving party. *Galena*, 638 F.3d at 196.

Pursuant to Rule 56, the movant bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record which the movant "believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden can be met by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* at 322. After the moving party has met its initial burden, summary judgment is appropriate if the nonmoving party fails to rebut the moving party's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." *See* Rule 56(c)(1)(A)–(B). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party may not rely on "bare assertions, compulsory allegations or suspicions," *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982), nor rest on the allegations in the pleadings. *Celotex Corp.*, 477 U.S. at 324. Rather, the nonmoving party must "go beyond the pleadings" and either by affidavits, depositions, answers to interrogatories, or admissions on file, "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.*

**DISCUSSION**

Defendants move for summary judgment on Plaintiff's § 1983 claims on the basis that Plaintiff has failed to present evidence sufficient for a factfinder to find that each Defendant was aware of (1) Plaintiff's complaints about Zayas or (2) the substantial risk posed by housing Plaintiff in a cell with Zayas. Defendants also argue that Plaintiff fails to show that each Correctional Defendant exhibited deliberate indifference in failing to intervene or adequately respond to the assault. Plaintiff disagrees and argues that he has presented sufficient evidence to raise a genuine issue of material fact as to each of the required elements.

Section 1983 provides an avenue for private citizens to seek civil remedies when they have been deprived of their rights by a state official in violation of federal law. 42 U.S.C. § 1983. The statute is not a source of substantive rights but serves as a mechanism for vindicating rights otherwise protected by federal law. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). To establish a § 1983 claim, a plaintiff must show "a violation of a right secured by the Constitution and laws of the United States and that the alleged deprivation was committed by a person acting under color of state law." *Kneipp*, 95 F.3d at 1204 (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995)).

### *Plaintiff's § 1983 Claims Against the Correctional Defendants*

Plaintiff asserts that the Correctional Defendants violated his Fourteenth Amendment rights[8] by failing to protect him from the assault by his cellmate, Zayas. Specifically, Plaintiff

---

[8] Plaintiff also asserted an Eighth Amendment claim in his complaint but does not address the claim in his response to Defendants' motion for summary judgment, focusing only on his Fourteenth Amendment claim. It is well-settled that because Plaintiff was a pretrial detainee, rather than a sentenced prisoner, the Fourteenth Amendment applies to Plaintiff's § 1983 claims, rather than the Eighth Amendment. *See Hubbard v. Taylor*, 399 F.3d 150, 165–66 (3d Cir. 2005) (distinguishing "between pretrial detainees' protection from 'punishment' under the Fourteenth Amendment and convicted inmates' protection from punishment that is 'cruel and unusual' under the Eighth Amendment"). Plaintiff's Eighth Amendment claims are therefore dismissed with prejudice. Notwithstanding, "pretrial detainees, who have not been convicted of any crimes, retain at least those constitutional rights that [the Supreme Court has] held are

contends that the Correctional Defendants acted with deliberate indifference by (1) housing or allowing him to be housed in the same cell as Zayas, despite their knowledge of the danger Zayas posed to Plaintiff and despite Plaintiff's alleged filing of grievances regarding Zayas, and (2) failing to adequately intervene when Zayas attacked him.

The Supreme Court of the United States has recognized that it is not "every injury suffered by one prisoner at the hands of anther that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To survive summary judgment on a failure to protect claim, a plaintiff must present evidence sufficient to show that: "(1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm." *Travillion v. Wetzel*, 765 F. App'x 785, 790 (3d Cir. 2019) (citations omitted). The United States Court of Appeals for the Third Circuit (the "Third Circuit") has explained that the first element is objective and the prison official must "knowingly and unreasonably disregard[] an objectively intolerable risk of harm." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 132 (3d Cir. 2001). The second element is subjective and the prison official "must actually have known or been aware of the excessive risk to inmate safety." *Id.* at 125. The "requirement of actual knowledge means that the official must both be aware of facts

---

enjoyed by convicted prisoners." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). Therefore, "[i]n the case of pretrial detainees, a failure-to-protect claim under the Fourteenth Amendment is analyzed under the same standard as an Eighth Amendment failure-to-protect claim." *Cliett v. Hughes*, 2020 WL 1244110, at *2 (E.D. Pa. Mar. 16, 2020).

Plaintiff also originally attempted to bring state law assault and battery claims against all Defendants, but now concedes that Defendants "cannot be held liable for assault and battery." (Pl's. Opp., ECF 36, at p. 15). As such, judgment will be entered in favor of all Defendants on the state law claims. Notably, these are Plaintiff's only alleged claims against Defendant Carney; judgment will be entered in favor of Defendant Carney.

from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Id.* at 131 (internal quotations omitted). "Consequently, prison officials can avoid liability by showing they were unaware of the danger, or they believed the risk was insubstantial or nonexistent." *Cliett*, 2020 WL 1244110, at *2 (citation omitted). Additionally, "prison officials may not be held liable if they prove that they were unaware of even an obvious risk or if they responded reasonably to a known risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 826.

Here, the Correctional Defendants argue that Plaintiff has failed to present any evidence that they were on notice and/or aware of any safety risk to Plaintiff, much less a safety risk at the hands of his cellmate, Zayas, such that they could be deemed deliberately indifferent to Plaintiff. Plaintiff disagrees and points to his deposition testimony regarding his submission of oral reports and written grievances regarding Zayas:

> Q: [Y]ou had reported [Zayas] to some of the staff at the prison; is that correct?
>
> A: More than once, maybe more than five, because he made me very nervous in the cell. I felt very nervous with him in the cell.

(Pl's. Opp., ECF 36-7 Ex. E, at pp. 17–18). Plaintiff also testified that he "had made several reports on [Zayas] previously, because he had some strange things about him." (*Id.* at p. 17). Similarly, Plaintiff points to his testimony regarding a grievance he purportedly filed after the incident in which he claims he previously told two sergeants about Zayas. However, neither this testimony nor any other record evidence shows that Plaintiff conveyed any fears of Zayas ***to the Correctional Defendants***. Indeed, when asked during his deposition whether he could name any of the correctional officers to whom he voiced his concerns about Zayas, he could not recall:

> Q: Do you know the names of the people to whom you reported [Zayas]?

7

    A: It's impossible, because it's been such a long time.

(*Id.* at p. 18).  Further, Plaintiff cannot use his letter summarizing the incident *after it occurred* to show that he suffered from a serious risk of harm or that Defendants were deliberately indifferent to that risk.  *See Morgan v. Terhune*, 164 F. App'x 213, 215 (3d Cir. 2005) (holding that plaintiff's "letter written to [defendants] summarizing the incident *after* it occurred is insufficient to establish that [plaintiff] suffered from a substantial risk of serious harm or that the defendants were deliberately indifferent to that risk").  By failing to present evidence that he conveyed any fears of Zayas **to the Correctional Defendants**, Plaintiff falls short of meeting his summary judgment burden on deliberate indifference.  *See Jones v. Beard*, 145 F. App'x 743, 745–46 (3d Cir. 2005) (affirming district court's grant of summary judgment where plaintiff failed to show "guards knew that he faced a substantial risk" and did not protect him because "the record was devoid of evidence establishing that [plaintiff] . . . made multiple complaints about [cellmate] to any one guard").

  Plaintiff's proffered evidence also fails to show the conveyance of any specific threats of serious harm by Zayas sufficient to have actually put the Correctional Defendants on notice of the requisite substantial risk of serious harm.  *See Cliett*, 2020 WL 1244110, at *2 (holding that the "prison official must not only be aware of the facts to support an inference that a substantial risk of serious harm exists but must also draw that inference himself" (citing *Farmer*, 511 U.S. at 837)).  Plaintiff does not provide any evidence to show that any of the Correctional Defendants were made aware that Zayas had a propensity for attacking or biting his cellmates, or that the Correctional Defendants had received any complaints from Plaintiff or any other inmate regarding any danger Zayas posed to his cellmates.  Indeed, Plaintiff testified that he and Zayas were cellmates for a week or week and a half before the incident, during which time Zayas "never" threatened to harm him.  (Pl's. Opp., ECF 36-7 Ex. E, at pp. 16–17).  Plaintiff has failed to provide evidence upon

which a reasonable factfinder could find that the Correctional Defendants had notice or were actually aware of a substantial risk of serious harm to Plaintiff by Zayas. *See Jones*, 145 F. App'x at 746 (affirming district court's grant of summary judgment where inmate plaintiff failed to present evidence that correctional officer defendant was actually aware that plaintiff "faced a substantial risk"); *Blackstone v. Thompson*, 568 F. App'x 82, 84 (3d Cir. 2014) (affirming district court's grant of summary judgment where plaintiff failed to present evidence that correctional officer defendant "both knew of and intentionally disregarded an excessive risk to [plaintiff's] safety").

It bears noting that, though mostly absent from his argument section, Plaintiff attaches exhibits to aid his argument but only refers to them in his facts section. For example, Plaintiff references Zayas's prior incidents with other detainees in his facts section. (Pl's. Opp., ECF 36, at pp. 2–3).⁹ An exhibit attached to Plaintiff's response shows that Zayas was transferred to different cells and units several times over a course of years before becoming cellmates with Plaintiff. Other exhibits show that Zayas got into several fights with other inmates resulting in "bleeding." None of these documents, however, evidence knowledge by the Correctional Defendants of the previous incidents. In addition, even if the Correctional Defendants could be deemed to have been on notice of these earlier incidents by way of the reports, none of those reports placed the Correctional Defendants on actual notice of the requisite substantial risk of serious harm posed by Zayas to Plaintiff. As such, these reports of previous incidents, without more, are insufficient to meet Plaintiff's summary judgment burden as to deliberate indifference.

---

⁹ At the summary judgment stage, a district court is not required to undertake an independent search of the record but need only consider "cited materials." Fed. R. Civ. P. 56(c)(3). In his argument section, Plaintiff has undertaken very little, if any effort, to cite to "particular parts of materials in the record" to support his Fourteenth Amendment claim, instead relying on confusing, inaccurate, and nonspecific citations to his facts section. *See id.* at (c)(1)(A).

This case is similar to the Third Circuit cases of *Jones v. Beard*, 145 F. App'x 743 (3d Cir. 2005) and *Blackstone v. Thompson*, 568 F. App'x 82 (3d Cir. 2014). In *Jones*, the plaintiff was assaulted by his cellmate, after the plaintiff had made oral and written complaints about him. *Id.* at 744–45. Nevertheless, because the record was "devoid of evidence establishing that [the plaintiff] articulated specific threats of serious harm, or that he made multiple complaints about [his attacker] to any one guard," the plaintiff's isolated comments to correctional officers were insufficient to demonstrate deliberate indifference. *Id.* at 745. The *Jones* Court noted that "threats between inmates are common and do not, in every circumstance, serve to impute actual knowledge of a substantial risk of harm." *Id.* (quoting *Jackson v. Everett*, 140 F.3d 1149, 1152 (8th Cir. 1998)). Unlike in *Jones*, the Correctional Defendants here had no notice of the impending attack. Under these circumstances and the lack of notice, no reasonable jury could find the Correctional Defendants to have been deliberately indifferent to a substantial risk of harm.

Similarly, in *Blackstone*, a Third Circuit panel affirmed a grant of summary judgment against an inmate who failed to establish a failure-to-protect claim. 568 F. App'x at 85. The plaintiff in *Blackstone* was attacked by his cellmate after the plaintiff had told a correctional officer that he wanted to move cells because "he was not 'getting along' and did not 'feel comfortable' with his cellmate." *Id.* at 84. The plaintiff's cellmate, like Zayas here, had been classified as "high risk" and the defendant officer "knew that other inmates had complained about [the cellmate] in the past." *Id.* at 83. Notwithstanding the plaintiff's complaints to the defendant correctional officer about the cellmate and the evidence showing that the cellmate had been previously designated "high risk," the *Blackstone* Court affirmed the district court's grant of summary judgment based on the absence of sufficient evidence of deliberate indifference. The Court explained its decision as follows:

10

> The risk that an inmate with some history of violence might attack another inmate for an unknown reason, however, is too speculative to give rise to an Eighth Amendment claim. *See Bistrian*, 696 F.3d at 371. It is true that the requisite mindset may be proved by circumstantial evidence, such as where a plaintiff demonstrates that a substantial risk was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past." *Farmer*, 511 U.S. at 842 (citations omitted); *see also Hamilton v. Leavy*, 117 F.3d 742, 747 (3d Cir. 1997). Here, however, there were no longstanding, pervasive, well-documented, or previously noted tensions between Weedon and Blackstone. Nor is there any indication in the record that Blackstone told Thompson of any specific incident or cause of tension between the cellmates from which a greater inference of risk could be drawn. *See Bistrian*, 696 F.3d at 368–71 (permitting Eighth Amendment claims to proceed where an inmate repeatedly advised officials of threats he received as a result of helping an investigation that targeted those with whom he was placed). To the contrary, Blackstone's filings repeatedly describe the type of "out-of-the-blue and unadorned 'I'm-in-trouble' entreaty," *id.* at 369–70, that is commonly faced by officials, who are charged with the "arduous" task of managing an inmate population while protecting those in custody. *Young v. Quinlan*, 960 F.2d 351, 363 n.23 (3d Cir.1992), *superseded by statute*, Prison Litigation Reform Act of 1996, Pub. L. No. 104–134, 110 Stat. 1321, *as recognized in Nyhuis v. Reno*, 204 F.3d 65, 71 n.7 (3d Cir. 2000).

*Id.* at 84. Like the plaintiffs in *Jones* and *Blackstone*, Plaintiff provides no evidence from which a reasonable factfinder could infer that the Correctional Defendants were on actual notice of any specific threats to Plaintiff by Zayas. As such, Plaintiff has not met his summary judgment burden on deliberate indifference.

Turning to Plaintiff's second argument, Plaintiff essentially asserts that the Correctional Defendants failed to intervene when he was attacked by Zayas. The Correctional Defendants argue that this claim fails because the undisputed evidence shows that Defendants Burnett and Broady responded to the incident and intervened within minutes of becoming aware of the incident. Further, Defendants Davis and Jeudy were not in the immediate vicinity such that they could be deemed to have been deliberate indifferent.

11

With respect to failure to intervene claims, the Third Circuit has explained that "[a]n official displays deliberate indifference if, when an attack occurs, he or she has 'a realistic and reasonable opportunity to intervene' ***but 'simply refuse[s] to do so.'***" *Brown v. Smith*, 2022 WL 2383609, at *2 (3d Cir. July 1, 2022) (quoting *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2022) (emphasis added)). "When making a determination as to deliberate indifference, the court must 'focus on what a defendant's mental attitude actually was (or is), rather than what it should have been (or should be).'" *Blackstone*, 568 F. App'x at 84. Additionally, "deliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. "No doubt, there are some circumstances in which an officer's response to an inmate attack is so half-hearted that it effectively amounts to no response at all . . . But surely there are cases at the other end of the spectrum in which an inmate fails to allege that an officer's response was so unreasonable as to give rise to an entitlement to relief." *Bistrian*, 696 F.3d at 371.

While there is a dispute as to how quickly it took Defendants Burnett and Broady to respond, there is no dispute that they did in fact respond within a matter of minutes and intervene. Thus, it cannot be said that these two Defendants "refused" to intervene. It is also undisputed that Defendants Jeudy and Davis were not in the vicinity of the incident. Thus, it also cannot be said that these two Defendants had a "realistic and reasonable opportunity to intervene." *Knox v. Doe*, 487 F. App'x 725, 728 (3d Cir. 2012) (affirming dismissal of failure to intervene claims against correctional officers who were in a different part of the prison during the underlying attack). Moreover, to sustain a § 1983 claim, a plaintiff must present evidence sufficient to show that the officer defendant's conduct (deliberate indifference) "caused" the plaintiff's injury. *Hamilton v. Leavy*, 117 F.3d 742, 747 (3d Cir. 1997) (holding that a plaintiff "must also show that the harm he suffered was caused by a prison official's deliberate indifference to his safety"). Here, Plaintiff

fails to present any evidence from which a reasonable factfinder could conclude or even infer that an earlier intervention by any of the Correctional Defendants would have made any difference in the outcome of Zayas's attack.  In the absence of such evidence, Plaintiff has not met his summary judgment burden on causation.  *Cf. Knox*, 487 F. App'x at 728 (holding that "even if the prison guards were present during the attack, no facts indicate that they had a 'realistic and reasonable opportunity to intervene'" (quoting *Mensinger*, 293 F.3d at 650)).

Notwithstanding, Plaintiff baldly argues that the Correctional Defendants were required to "tour" the unit every 30 minutes and that had Defendant Burnett done so he "would have heard the screams and yelling" and "heard and seen the event." (Pl's. Opp., ECF 36, at pp. 4–5).  This argument fails for the same reasons addressed above.  As noted, Plaintiff must present evidence sufficient to show that his injury was "caused" by the Correctional Defendants' deliberate indifference—here, by their failure to undertake a tour every 30 minutes.  Simply put, Plaintiff presents no evidence from which a reasonable factfinder could conclude that Zayas's attack on Plaintiff would have been prevented had the Correctional Defendants undertaken a tour of the unit every 30 minutes.

### *Plaintiff's Monell Claims Against the City and Farrell*

At Count III, Plaintiff asserts a *Monell* claim against Defendants City and Farrell premised on alleged policies of allowing excessive force ***by correctional officers*** against detainees. Specifically, in his complaint, Plaintiff alleges that Defendants City and Farrell condoned the use of "unjustified, unreasonable, unnecessary, malicious, sadistic, and excessive force against inmates . . . and the ***failure of correctional officers*** to stop the use of such force by ***their fellow officers*** when they observed it." (Compl., ECF 1, at ¶ 54 (emphasis added)).  Plaintiff also alleges that Defendants City and Farrell failed to train correctional officers properly for "obtaining compliance and restraining inmates in a manner utilizing only justified, reasonable, and necessary

13

force." (*Id.* at ¶ 55). Plaintiff further claims it was Defendants City and Farrell's policy and practice to "cover up **corrections officers'** assault and battery" as well as violations of the Fourth, Fourteenth, and Eighth Amendment rights of inmates **by corrections officers**. (*Id.* at ¶ 56 (emphasis added)).

A governmental entity may not be held liable under § 1983 for constitutional violations caused solely by its employees or agents under the principle of *respondeat superior*. *Monell v. N.Y. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Rather, a municipality may only be held liable under § 1983 for monetary, declaratory, or injunctive relief where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. *Id.* at 694. Thus, liability may be imposed on a municipality only where its official policy or custom "causes" an employee to violate another person's constitutional rights. *Id.*; *see also Brown v. Sch. Dist. of Phila.*, 456 F. App'x 88, 90 (3d Cir. 2011) (citing *Santiago v. Warminster Twp.*, 629 F.3d 121, 135 (3d Cir. 2010)).

Defendants City and Farrell move for summary judgment on Plaintiff's *Monell* claims on the basis that Plaintiff has presented no evidence to support any unconstitutional policies with respect to **excessive force by officers** that could have somehow prevented the injuries Plaintiff sustained at the hands of his cellmate. This Court agrees. Plaintiff has presented no evidence of excessive force by any correctional officers. Therefore, Plaintiff's *Monell* claims—premised entirely on excessive force by correctional officers on inmates—fails.

Further, in response to Defendants' motion for summary judgment, Plaintiff essentially attempts to convert the *Monell* claim from one based on excessive force by officers into one premised on grievances, understaffing, and cellmate violence. (Pl's. Opp., ECF 36, at p. 12).

Plaintiff, however, asserts no such claim in his complaint. "Plaintiff's counsel cannot reasonably expect to amend the complaint after the close of discovery merely by raising new arguments in the responsive papers." *Speziale v. Bethlehem Area Sch. Dist.*, 266 F. Supp. 2d 366, n.3 (E.D. Pa. 2003) (refusing to address plaintiff's new claims raised for the first time in response to defendant's motion for summary judgment that were not in his complaints or amended complaints); *see also Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 499 n. 1 (3d Cir. 1997) (affirming summary judgment and refusing to consider claims that were not pled in the plaintiff's complaint); *Burgos v. City of Phila.*, 439 F. Supp. 2d 470, 488 n.86 (E.D. Pa. 2020) (holding plaintiff "cannot raise a new claim in [his] brief that [he] has not already pleaded"). Therefore, Plaintiff's *Monell* claims are dismissed.

**CONCLUSION**

While the assault that Plaintiff endured at the hands of Zayas is horrific and not condoned, there is insufficient evidence in the record to show that Defendants were deliberately indifferent to Plaintiff's safety or that any such alleged deliberate indifference caused Plaintiff's harm. For the reasons set forth, Defendants' motion for summary judgment is granted. An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.